# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LANG SPRAGGINS,
d/b/a Purple Sage Antique Guns,

       Plaintiff,

vs.                                                                                         No. CIV 04-1384 JB/RLP

STEPHEN R. REED, individually and as
Mayor of the City of Harrisburg, PA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Response to Defendants' Recent Request that Plaintiff Now Respond to Defendants' Motion for Summary Judgement, Request for the Court to Declare the Rights of the Parties Regarding the Settlement, To Declare the Parties Have Settled, For the Court to Suspend the Need for the Plaintiff to Respond to Defendants' Motion for Summary Judgment Until the Court Entertains a Status Conference/Hearing on These Issues, filed December 28, 2005 (Doc. 30); and (ii) the Defendants' Motion to Enforce Settlement, filed December 28, 2005 (Doc. 31). The Court held an evidentiary hearing on January 19, 2006, where the Court, among other things, took the oral testimony of the Plaintiff Lang Spraggins, and Reed presented an affidavit of Steven Richard Dade, Solicitor for the City of Harrisburg, Pennsylvania. The primary issue is whether the Settlement Agreement between Spraggins and Defendant Stephen R. Reed for Reed to pay a sum certain, without any discussion of shifting of attorneys fees, precludes Spraggins from now attempting to secure fees from Reed. Because there is no dispute that the parties reached a settlement of all issues, and because Spraggins now wants a material term added to the

settlement, the Court will grant Reed's motion to enforce the settlement, dismiss the motion for summary judgment as moot, and declare that the parties have settled.

## FACTUAL AND PROCEDURAL BACKGROUND

It has been several years since Reed received the items at issue, which belonged to famous individuals such as Doc Holliday, at what Spraggins considers to be a fraction of their true value. See Response to Defendants' Recent Request that Plaintiff Now Respond to Defendants' Motion for Summary Judgement, Request for the Court to Declare the Rights of the Parties Regarding the Settlement, To Declare the Parties Have Settled, For the Court to Suspend the Need for the Plaintiff to Respond to Defendants' Motion for Summary Judgment Until the Court Entertains a Status Conference/Hearing on These Issues ("Response to Defendants' Request") ¶ 2(E), at 3-4. Spraggins maintains that he wanted underprivileged children to be exposed to these one-of-a-kind items at a public museum in Harrisburg, Pennsylvania. See id.; Transcript of Hearing at 14:24-15:14 (January 19, 2005).[1] Spraggins has persistently asked Reed to return the items or pay what Reed agreed to pay. See Response to Defendants' Request ¶ 2(E), at 3-4.

In the Court's Pretrial Order, the Court set a jury trial for December 12, 2005 on its trailing docket. See Initial Pretrial Report at 11, filed April 13, 2005 (Doc. 13). The parties estimated that the trial would take three days. See id.

After responding to Spraggins' motion for summary judgment, see Plaintiff Lang Spraggins Motion for Summary Judgment, filed July 22, 2005 (Doc. 22) and Mayor Reed's Objections and Response to Plaintiff's Motion for Summary Judgment, filed August 5, 2005, (Doc. 24), Reed moved

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

for summary judgment on all claims, see Mayor Reed's Motion for Summary Judgment, filed August 26, 2005 (Doc. 25).

Following unsuccessful mediation with the Honorable Richard L. Puglisi, United States Magistrate Judge, the parties on September 7, 2005 entered into a settlement conference. See Transcript of Hearing at 14:1-9, 16:1-2; Defendants' Motion to Enforce Settlement at 1; Response to Defendants' Request ¶ 2(A), at 2. Although Spraggins' counsel and Harrisburg City Solicitor Steven Dade were present for the settlement conference, Reed and Spraggins telephonically discussed their differences and entered into an agreement to settle the case. See Transcript of Hearing at 13:25-16:2; Response to Defendants' Request ¶ 2(B), at 2; Defendants' Motion to Enforce Settlement ¶ 1, at 2; Affidavit of Steven Richard Dade (hereinafter "Dade Aff.") ¶ 3, at 2 (executed January 18, 2006).

During the September 7, 2005 telephone call, Reed and Spraggins agreed to settle this case in a mutually beneficial manner and entered into an agreement to settle the case and all litigation. See Transcript of Hearing at 13:25-16:2; Response to Defendants' Request ¶ 2(B), at 2; Defendants' Motion to Enforce Settlement ¶ 1, at 2; Dade Aff. ¶ 3, at 2; Affidavit of Thomas R. Mack in Support of Defendants' Motion to Enforce Settlement (hereinafter "Mack Aff.") ¶ 1, at 1 (executed December 28, 2005). In general, the Settlement Agreement involved: (i) payment of $115,250.00 by the City for items that Reed had received on Invoice F several years ago at the invoice price on the open account; (ii) Spraggins' return of the Doc Holliday revolver to the City, which the City had allegedly unilaterally sent to Spraggins in an attempted payment; and (iii) the City's purchase of additional historic items from Spraggins, including the Doc Holliday dental drill, to be put together with the Doc Holliday dental chair as earlier agreed, for another payment by the City of $27,500.00. See Mack

Aff. ¶¶ 1-2, at 1-2; Transcript of Hearing at 18:23-19:5, 16:6-22; Memorandum of Settlement at 1; Mutual Release and Settlement Agreement ¶ 2(a)-(b), at 1-2; Dade Aff. ¶ 3, at 2. Spraggins agreed to accept payment at the original price for the items without pushing for interest on the unpaid $115,000.00. See Response to Defendants' Request ¶ 3, at 4. The amounts were the same as the original sale price when the City received the items several years ago. See id. ¶ 2(E), at 3. No one discussed attorneys fees in the settlement conference. See Transcript of Hearing at 16:10-12; Dade Aff. ¶ 4, at 2; Response to Defendants' Request ¶ 2(B), at 2. Spraggins contends that the interest, at five percent, on the $115,000.000, would pay his attorneys fees. See Response to Defendants' Request ¶ 3, at 4.

Spraggins and Reed advised their attorneys of the agreement. See Mack Aff. ¶ 1, at 1; Defendants' Motion to Enforce Settlement at 1. Reed's counsel reported to the Court's Courtroom Deputy Clerk ("CRD") on November 4, 2005, that the parties had settled the case. Spraggins' counsel also communicated to the Court's CRD that the case was settled.[2] See Response to Defendants' Request ¶ 1, at 2. Based on the parties' representations that the case had settled, the Court's CRD vacated the trial setting.

As a result of the negotiated Settlement Agreement on all claims, Reed's counsel permitted Spraggins' counsel an indefinite extension of time to respond to the pending motion for summary judgment. See Response to Plaintiff's Motion to Stay Motion for Summary Judgment and Request for Status Conference ("Response to Plaintiff's Motion to Stay") at 2, filed January 17, 2006 (Doc. 33). Spraggins' counsel stated the indefinite extension could be revoked in writing. See id.

---

[2] The Court's CRD does not recall Spraggins' counsel informing her that the case had settled, but the Court will accept Spraggins' representation in his brief that his counsel did communicate to the Court that the case was settled.

Reed's attorney drafted settlement documents to memorialize the oral agreement and to arrange for dismissal of the litigation. See Defendants' Motion to Enforce Settlement at 1. On September 9, 2005, a Memorandum of Settlement was sent to Peter Everett, IV, Spraggins' attorney, setting forth the settlement's terms. See Mack Aff. ¶ 2, at 1-2; Memorandum of Settlement at 1; Email from Thomas R. Mack to Peter Everett (dated September 9, 2005). Paragraph 6 of the Memorandum states: "The parties shall bear their own costs and attorney fees." Memorandum of Settlement ¶ 6, at 1.

Pursuant to the Memorandum of Settlement, Reed's attorney then prepared and drafted a Mutual Release and Settlement Agreement and Stipulated Order of Dismissal, which conformed to the oral agreement between the parties. See id. ¶ 3, at 2. The Settlement Agreement did not have any provision concerning allocation of attorneys fees, but did state that the $115,250.00 was complete payment for all damages, "including all . . . attorneys' fees . . . ." Mutual Release and Settlement Agreement ¶ 2(a), at 1-2. The Settlement Agreement did not otherwise mention attorneys fees. See generally Mutual Release and Settlement Agreement. The Settlement Agreement also contained an integration clause:

> 3. <u>Full, Fair, Equitable Settlement</u>. Both Releasor and Releasee consider the settlement of the Lawsuit to be fair and equitable under all circumstances. Releasor and Releasee accept it as full and final settlement of all claims, rights and damages which they now has [sic] or may have in the future against each other, their agents, employees or representatives in regard to all claims which could have been made in the Lawsuit, or as a result of the Lawsuit.

Id. ¶ 3, at 2. The Stipulated Order of Dismissal stated in paragraph 5: "Each party shall bear its own costs and attorney fees." Stipulated Order of Dismissal With Prejudice ¶ 5, at 2; Email from Thomas R. Mack to Peter Everett (dated October 4, 2005).

Reed's counsel then transmitted the documents to Spraggins' attorney. See Mutual Release and Settlement Agreement; Stipulated Order of Dismissal With Prejudice; Mack Aff. ¶ 3, at 2; Email from Thomas R. Mack to Peter Everett at 1 (dated October 4, 2005). After several inquiries by Reed's attorney, Spraggins' attorney responded with a few changes to the form of the Settlement Agreement, but made no substantive changes. See Mack Aff. ¶¶ 4-6, at 2; Letter from Thomas R. Mack to Peter Everett at 1 (dated October 17, 2005); Letter from Thomas R. Mack to Peter Everett at 1 (dated October 28, 2005); Email from Crystal Garcia to Thomas R. Mack at 1 (dated Monday October 31, 2005). Reed's counsel made the requested changes and sent the final versions of the documents to Spraggins' attorney. See Mack Aff. ¶ 7, at 2; Letter from Thomas R. Mack to Peter Everett at 1 (dated November 2, 2005).

Spraggins signed the Settlement Agreement on November 5, 2005. See Mutual Release and Settlement Agreement at 4 (signed and dated November 5, 2005); Transcript of Hearing at 24:25-25:4. Spraggins represents in his brief that he signed the document with the understanding that he was going to receive the total amount Reed had agreed to pay for the items.[3] See Response to Defendants' Request ¶ 2(E), at 3. Spraggins did not, however, send Reed the signed Settlement Agreement, because he subsequently read, in another settlement document, the statement that he had to pay his own attorneys fees. See id. Spraggins observed that he would not receive the amount Reed had agreed to pay for the items if he were required to pay part of the sale price to his attorney for attorneys fees. See id. Spraggins requested his counsel to communicate his feelings about receiving full price, as agreed, to Reed's attorney. See id.

---

[3] At the hearing, Spraggins testified that he did not remember if he thought he would not be precluded from seeking attorneys fees when he signed the Settlement Agreement. See Transcript of Hearing at 27:16-22.

Spraggins did not insist on attorneys fees until November 15, 2005. <u>See</u> <u>generally</u> Mack Aff. On November 15, 2005, Ten days after Spraggins signed the Settlement Agreement, Spraggins' counsel notified Reed's counsel about Spraggins' new concerns about the Settlement Agreement. <u>See</u> Letter from Peter Everett to Tom Mack at 1 (dated November 15, 2005).

Spraggins wanted his attorneys fees paid as part of the Settlement Agreement. <u>See</u> Letter from Peter Everett to Tom Mack at 1 (dated November 15, 2005). Reed considered Spraggins' desires to be a newly proposed and additional substantive term, <u>i.e.</u>, that Spraggins was now asking for attorneys fees to be added to the agreement -- a term not in the parties' oral agreement. <u>See</u> Mack Aff. ¶ 9, at 3; Letter from Thomas R. Mack to Peter Everett at 1 (dated November 15, 2005). Reed's counsel stated his client would not be willing to pay for attorneys fees, rejected the late attempt to add attorneys fees to the Settlement Agreement, and demanded execution of the document pursuant to the terms agreed upon by the parties. <u>See</u> Mack Aff. ¶ 9, at 3; Letter from Thomas R. Mack to Peter Everett at 1 (dated November 15, 2005). By letter dated December 9, 2005, Reed's counsel withdrew the extension of time for Spraggins to respond to the motion for summary judgment. <u>See</u> Letter from Thomas R. Mack to Peter Everett IV at 1 (dated December 9, 2005). In the letter, Reed's counsel granted Spraggins fourteen days to respond to the motion. <u>See</u> <u>id.</u>

Spraggins moves the Court to deny or delay the summary judgment that Reed requests. <u>See</u> Response to Defendants' Request at 5. He attaches the agreement that Reed's attorney prepared and Spraggins signed. <u>See</u> Mutual Release and Settlement Agreement. Spraggins requests that the Court schedule a status conference or hearing, and to declare/determine: (i) whether an agreement by the two parties to pay a sum certain without discussion of attorneys fees precludes him from attempting to argue for attorneys fees; (ii) whether the parties committed a mutual mistake of fact when they

discussed a certain payment between themselves without discussing attorneys fees; and (iii) whether the Court should solicit briefing on the issue of the legal effect of the parties' actions, i.e., can the Settlement Agreement, which addressed all substantive issues, be legally enforced. See id. at 4-5. Spraggins asks the Court to stay the motion for summary judgment until the Court decides, at a status conference or at a hearing, the existence vel non of a settlement agreement and whether it desires the parties to brief or to orally argue their clients' relative positions. See id. at 5.

Reed's counsel contacted Spraggins' counsel and told Spraggins' counsel that Reed was going to file a motion to enforce the Settlement Agreement. See id. ¶ 4, at 4. Spraggins' attorney indicated that he does not concur in Reed's motion. See Defendants' Motion to Enforce Settlement at 2. Spraggins contends that, as a method of putting pressure on Spraggins, Reed's counsel is attempting to pursue the motion for summary judgment, which would force Spraggins to incur additional and substantial attorneys fees. See id.

Reed moves the Court to stay all matters currently pending in this case and to enforce the terms of the oral settlement agreement that the parties reached on September 7, 2005. See Defendants' Motion to Enforce Settlement. Reed attaches to his motion: (i) the Affidavit of Thomas R. Mack (executed December 28, 2005); (ii) the Memorandum of Settlement in its revised form, which includes additions that Reed's counsel made without input from Spraggins' counsel; (iii) the Mutual Release and Settlement Agreement (unsigned); and (iv) the Stipulated Order of Dismissal. See id. at 2. Specifically, Reed requests that the Court issue an order enforcing the Settlement Agreement and dismissing this case with prejudice, compelling Spraggins to sign the Settlement Agreement and Release in Full of All Claims and Rights, and requiring Spraggins and his attorney to abide by all terms of the Settlement Agreement. See id. at 6.

For his response to Spraggins' motion, Reed requests the Court enforce the settlement and grant his motion for summary judgment on Spraggins' claims for open account, attorneys fees, and interest. See Response to Plaintiff's Motion to Stay at 1. In support of his motion, Reed incorporates his Motion for Summary Judgment, with Supporting Memorandum, filed August 26, 2005, see Docs. 25 and 26, and his Motion to Enforce Settlement, see Response to Plaintiff's Motion to Stay at 1. Reed also requests the Court deny Spraggins' Motion for Summary Judgment, and incorporates his response to that motion, see Doc. 24. See Response to Plaintiff's Motion to Stay at 1-2. Reed stated that, in light of Spraggins' motion filed December 28, 2005 and the request to stay the Reed motion for summary judgment, Reed has not submitted a notice of completion of briefing on the motion for summary judgment. See id. at 2. Reed states, however, that it appears that briefing on all issues raised in the motion for summary judgment is substantially completed. See id.

The Court's CRD inquired of counsel whether the Court could rule on the papers before it. Reed's counsel urged the Court to so proceed, but Spraggins counsel wanted an evidentiary hearing. The Court held that hearing on January 19, 2006.

## **LAW REGARDING SETTLEMENTS**

A district court has authority, while a case is pending before it, to enforce settlement agreements reached by litigants. See United States v. Hardage, 982 F.2d 1491, 1496 (10th Cir. 1993). The United States Court of Appeals for the Tenth Circuit reviews the district court's use of such authority only for abuse of discretion. See id. at 1495.

A settlement agreement is a contract. See Republic Res. Corp. v. ISI Petroleum West Caddo Drilling Program 1981, 836 F.2d 462, 465 (10th Cir. 1987)("We construe a settlement stipulation in the same manner as a contract to determine how it should be enforced.")(citation omitted). Thus,

when determining whether a court will enforce a settlement agreement, a court applies state contract law. See United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000)("Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law.")(citing Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996)).

New Mexico public policy favors settlement agreements. See Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc., 106 N.M. 705, 707, 749 P.2d 90, 92 (1988). New Mexico courts presume that, when parties have settled a dispute, they "intended a complete accord and satisfaction of their respective claims . . . ." Bennett v. Kisluk, 112 N.M. 221, 223-24, 814 P.2d 89, 91-92 (1991). In applying this policy, New Mexico courts are bound by unambiguous language in settlement agreements. See Burden v. Colonial Homes, Inc., 79 N.M. 170, 173, 441 P.2d 210, 213 (1968)(citation omitted).

"[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." United States v. Hardage, 982 F.2d at 1496. A court must have before it a sufficient factual development -- consisting of sworn testimony subject to cross-examination, sworn affidavits, and legal memoranda -- to enforce a settlement agreement. See id. The United States Court of Appeals for the Sixth Circuit has held that an evidentiary hearing is not required where an agreement is clear and unambiguous, and no issue of fact is present. See Aro Corp. v. Allied Witan Co., 531 F.2d 1368, 1372 (6th Cir. 1975).

An oral settlement agreement is enforceable. See Herrera v. Herrera, 126 N.M. 705, 708-710, 974 P.2d 675, 678-680 (Ct. App. 1999). Because settlement agreements are highly favored, a party seeking relief from a settlement has the burden of persuasion. See Marrujo v. Chavez, 77 N.M. 595, 599, 426 P.2d 199, 201 (1967); Gonzales v. Atnip, 102 N.M. 194, 195, 692 P.2d 1343, 1344 (Ct.

App. 1984).

Mutual mistake is a ground for contract reformation in New Mexico. See State ex rel. State Highway & Transp. Dep't v. Garley, 111 N.M. 383, 388, 806 P.2d 32, 37 (1991). A court is permitted to reform a contract upon finding "a mutual mistake; that is where there has been a meeting of minds, an agreement actually entered into, but the contract, deed, settlement, or other instrument, in its written form, does not express what was really intended by the parties thereto." C.R. Anthony Company v. Loretta Mall Partners, 112 N.M. 504, 511, 817 P.2d 238, 245 (1991)(citing Cleveland v. Bateman, 21 N.M. 675, 158 P. 648 (1915)). A court may also avoid a contract upon finding mutual mistake:

> The legal grounds for reformation based upon mutual mistake are to be distinguished from those which entitle a party to avoid the contract based on mistake. To avoid a contract based on mutual mistake, the party adversely affected by the mistake must show that: (1) The mistake goes to a basic assumption on which the contract was made; (2) the mistake has a material effect on the agreed exchange of performances; and (3) the mistake is not one for which that party bears the risk. Restatement (Second) of Contracts § 152; State ex rel. State Highway & Transp. Dep't v. Garley, 111 N.M. 383, 806 P.2d 32 (1991)(discussing distinction).

Id. at 511 n.7, 817 P.2d at 245 n.7.

## ANALYSIS

The Court must review the Settlement Agreement under New Mexico law. Both parties agree that, for all ostensible purposes, they settled the case. Both parties contacted the Court's CRD and informed her that the case was settled. Spraggins admits in the Response to Defendants' Request that an agreement had been made -- with an apparent caveat that there was a mutual mistake of fact. Spraggins also submitted a copy of the Mutual Release and Settlement Agreement, which he signed. The oral agreement that Reed and Spraggins made to settle this case is thus enforceable. See Herrera

v. Herrera, 126 N.M. at 708-710, 974 P.2d at 678-680.

There is sufficient information for the Court to conclude that the parties reached a settlement agreement and for the Court to discern what the terms of that agreement are. Neither party seriously disputes that an agreement was reached, but rather the dispute centers around whether the parties agreed that Reed would pay Spraggins' attorneys fees. The terms in the agreement included an intention to settle the case, payment of a specific sum to Spraggins for the balance outstanding on Invoice F, purchase of the Doc Holliday dental drill for a specified sum, shipping directions, and a release to be worked out between the attorneys and with Spraggins' counsel's input and approval of that release agreement. Because both parties concede that an agreement was reached, Spraggins bears the burden in seeking relief from such settlement agreement. See Gonzales v. Atnip, 102 N.M. at 195, 692 P.2d at 1344.

Absent from the oral agreement was a term providing for the payment of Spraggins' attorneys fees. Spraggins concedes that attorneys fees were not mentioned in the oral agreement. Several documents were sent to Spraggins, none of which allowed him to collect attorneys fees, and two of which, the Settlement Memorandum and the Stipulated Order of Dismissal With Prejudice, specifically stated that each party would pay their own attorneys fees. Spraggins did not object to these documents until later in the process.

Unless Spraggins can show an ambiguous term in this agreement supporting a payment of attorneys fees, the Court has no authority to modify the terms of the agreement, and must interpret and enforce the contract's clear language, without making a new agreement for the parties. See Nearburg v. Yates Petroleum Corp., 123 N.M. 526, 535, 943 P.2d 560, 569 (Ct. App. 1997); CC Hous. Corp. v. Ryder Truck Rental, Inc., 106 N.M. 577, 579, 746 P.2d 1109, 1111 (1987)("[T]he

court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties.")(citations omitted). There are no ambiguous terms in the agreement. Rather, Spraggins thought that he was going to receive a certain sum but failed to bargain for an additional amount to cover the cost of attorneys fees. There is, however, nothing ambiguous about the sum that Reed agreed to pay and Spraggins agreed to take.

The parties reached a settlement agreement, and afterwards, Spraggins tried to obtain more than that for which he bargained. Spraggins did not, in the oral agreement, obtain his attorneys fees. Spraggins is attempting to introduce, after the settlement, a new material term. The Court can resolve the issue in several ways: (i) find Spraggins' assertion of mutual mistake unsupported and grant Reed's Motion to Enforce the Settlement Agreement; (ii) grant Reed's Motion for Summary Judgment on the open account claim, thus removing any legal claim for attorneys fees; or (iii) grant Reed's Motion for Summary Judgment on all claims.

The parties reached a full and final settlement agreement, Reed reduced it to writing, Spraggins' counsel did not object to the substance of the agreement as written, Spraggins -- without verification -- endorsed the agreement, and later Spraggins sought to negotiate a new deal, adding a new term to the settlement. Reed did not agree to any additional settlement terms and seeks enforcement of the agreement as negotiated. At times, Spraggins appears to agree with Reed's position that the parties have an enforceable settlement agreement on all claims and disputes. See Response to Defendants' Request ¶¶ 1, 2B, 2C, 2E, 3, at 1-3. At other times, Spraggins opposes Reed's position and opposes the Settlement Agreement by alleging mutual mistake of fact based upon the parties' failure to include in the Settlement Agreement a provision for payment of attorneys fees.

See id. at 3-4. Spraggins' failure, however, to negotiate an additional settlement term and his later hope to improve his position in a settlement agreement, does not create a mutual mistake of fact.

Spraggins appears to argue that there was a mutual mistake of fact when the parties discussed a certain payment between themselves without discussing attorneys fees. See Response to Defendants' Request at 5. For a mistake to be mutual and common to both parties, it must appear that both parties have done what neither intended. See Cargill v. Sherrod, 96 N.M. 431, 433, 631 P.2d 726, 728 (1981)(citing Sierra Blanca Sales Co., Inc. v. Newco Industries, Inc., 84 N.M. 524, 505 P.2d 867 (Ct. App. 1972)). Here, Spraggins has not shown mistake and certainly not mutual mistake. He cannot meet the elements of such a claim, regardless whether he seeks to reform or avoid the Settlement Agreement. There is no mutual mistake because, although Spraggins may have mistakenly believed that he would be getting attorneys fees free and clear from the agreed upon sum certain, Reed never intended to pay more than what he agreed in the oral settlement agreement. Spraggins cannot now attempt to change that agreement. The Court should enforce the contract as the parties negotiated and wrote it.

In one of his alternative requests for relief, Reed suggests that the Court may dispose of Spraggins' claims for attorneys fees and interest by granting Reed's pending motion for summary judgment. The Court need not, however, decide whether Spraggins has shown an open account, the only grounds upon which he could claim an award of attorneys fees. See Response to Plaintiff's Motion to Stay at 4. It is enough for the Court to find that neither an award of attorneys fees nor interest was a negotiated term of settlement.

In Reed's second alternative, he maintains that the Court may dispose of all of Spraggins' claims through summary judgment. See id. Again, it is sufficient for the Court to enforce the

-14-

Settlement Agreement that the parties negotiated.

**IT IS ORDERED** that the Plaintiff's Response to Defendants' Recent Request that Plaintiff Now Respond to Defendants' Motion for Summary Judgement, Request for the Court to Declare the Rights of the Parties Regarding the Settlement, to Declare the Parties Have Settled, for the Court to Suspend the Need for the Plaintiff to Respond to Defendants' Motion for Summary Judgement Until the Court Entertains a Status Conference/Hearing on These Issues is granted in part and denied in part, as follows:

1. The Court held a hearing and status conference on January 19, 2006.

2. The Plaintiff need not respond to the Defendant's pending Motion for Summary Judgment.

3. The Defendant's Motion for Summary Judgment is dismissed as moot.

4. The parties have settled as outlined in the Settlement Agreement that the Plaintiff has signed.

5. The parties have settled without any shifting of attorneys fees.

6. The Court declares that, under the circumstances of this case, an agreement between Spraggins and Reed for Reed to pay a sum certain, without a discussion of attorneys fees, precludes Spraggins from attempting to argue for attorneys fees at this stage.

7. The parties did not commit a mutual mistake of fact when they discussed a certain payment between themselves without discussing attorneys fees.

8. The Court will not solicit further briefing on the issues of the legal effect of the parties' actions, i.e., can the Settlement Agreement, which addresses all substantive issues, be legally enforced.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Enforce Settlement is granted as follows:

1. The Court will enforce the Settlement Agreement between the parties according to its terms as expressed in the written document that the Plaintiff has executed.

2. The Court will dismiss the case with prejudice in a document separate from this order.

3. Spraggins shall sign the Settlement Agreement and Release in Full of All Claims and Rights.

4. Spraggins and his attorney shall abide by all terms of the Settlement Agreement.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Peter Everett IV
Everett Law
Albuquerque, New Mexico

   *Attorney for the Plaintiff*

Thomas R. Mack
Dylan O'Reilly
Kirk R. Allen
Miller Stratvert, P.A.
Albuquerque, New Mexico

   *Attorneys for the Defendant*